IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 7, 2009

Charles R. Fulbruge III
Clerk

No. 07-70043

GARY JOHNSON

Petitioner - Appellant

v.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 05-CV-3581

Before JOLLY, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Gary Johnson was convicted of capital murder and sentenced to death for the 1986 murders of James Hazelton and Peter Sparagana during the same criminal transaction. We granted a certificate of appealability ("COA") authorizing Johnson to appeal the district court's denial of habeas relief for Johnson's due process and ineffective assistance of counsel claims. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

The recitation of the facts that follows is drawn from the opinions of the Texas Court of Criminal Appeals and the district court.

Bill and Shannon Ferguson were in their pasture on the evening of April 30, 1986, waiting for a mare to foal. Sometime before 10:00 p.m., they saw a truck pull over near a gate to the adjacent Triple Creek Ranch. They saw someone get out of the truck, heard a chain rattle on the gate, and saw the truck go through the gate and onto the ranch.[1] The truck's headlights were off, but Mrs. Ferguson noticed an unusual brake light pattern on the truck (four large round lights, two on each side, one above the other). Mrs. Ferguson went to the barn and called the Triple Creek Ranch. She spoke to the wife of Jim Hazelton, the ranch manager, and told her that a burglary might be taking place because a truck had entered the ranch with its lights off. Mrs. Hazelton told Mrs. Ferguson that her husband would be right out.

Fifteen minutes later, the Fergusons saw Triple Creek Ranch manager Jim Hazelton's truck appear at the same gate. Hazelton was unable to enter the ranch through that gate, so he backed up and entered the ranch from another location. Eventually the Fergusons heard Hazelton's truck stop. When they heard a gunshot, Mrs. Ferguson went back to the barn to call the Walker County Sheriff's Department and Mrs. Hazelton.

While Mrs. Ferguson was gone, Mr. Ferguson remained in the pasture. Several minutes after the first gunshot, Mr. Ferguson heard several shots fired in rapid succession. After a brief silence, Mr. Ferguson heard someone plead for his life. The pleas were silenced by two more shots. When the law enforcement

---

[1] Other evidence showed that the original chain had been cut and a new lock had been placed on the gate.

officials arrived, they discovered the bodies of Jim Hazelton and his brother-in-law, Peter Sparagana.[2]

Walker County Deputy Sheriff Allen McCandles saw a truck matching Shannon Ferguson's description of the truck driven by the intruders in Johnson's pasture after the shootings, and he saw Johnson driving the truck numerous times. Another law enforcement officer testified that two of the lights on the back of Johnson's truck were removed in the two weeks after the murders.

Three of Johnson's brothers–Tracey, Randy, and Ricky–testified for the State at trial. Tracey testified that Johnson came to Missouri during the fall of 1986, returned Tracey's .44 caliber pistol, and asked Tracey to destroy it because the gun had been used in a double murder in which Johnson and their brother, Terry, participated.

Ricky testified that, during that same visit to Missouri, Johnson was in possession of the .44 caliber pistol, he admitted killing one man with the gun, and he said that he and Terry also killed a second man. A state firearms examiner later identified a bullet fragment retrieved from Hazelton's body as having been fired from the same .44 caliber pistol that Johnson returned to Tracey.

Randy testified that Johnson told him that Johnson and Terry were out at the Triple Creek to steal something when two men "got the drop on them"; while Terry distracted them, Johnson shot one of the men; Johnson and Terry caught the other man, brought him back to the barn, made him kneel, and tied his hands behind his back; and while the second man pleaded for mercy, Johnson shoved the gun in his mouth. The medical examiner testified that the second man (Hazelton) died from a contact bullet wound to the mouth. Randy testified that Johnson told him the two men were killed because "dead mean don't talk."

---

[2] Mrs. Hazelton is Peter Sparagana's sister.

The defense called Johnson's brother, Terry, as a witness. (Defense counsel's decision to do so is the basis for Johnson's ineffective assistance of counsel claim.) Terry testified that Johnson killed both of the victims. The defense also presented testimony from two inmates in the Walker County Jail that Terry Johnson told them that he (Terry) had killed both of the victims.

At the penalty phase of the trial, the State presented evidence that Johnson shot and killed a neighbor's dog from a distance of 75 to 100 yards, while the dog was standing a few feet from the neighbor. The State also presented evidence that Johnson was carrying a loaded handgun when he was arrested for the murders. Dr. James P. Grigson, a psychiatrist, testified for the State. Based on a hypothetical question that summarized the testimony about Johnson, Dr. Grigson concluded that Johnson would be a future danger to society.

Johnson's uncle testified for the defense at the penalty phase that he had never seen Johnson act violently. Johnson's former boss and a co-worker testified that Johnson was hard-working, respectful, and non-violent. Johnson's ex-wife testified that Johnson was never violent toward their children, and never drank or used drugs. Dr. James Marquart, a sociologist, testified for the defense. He had studied the post-conviction criminality of sixty-nine convicted murderers whose sentences were subsequently reduced or commuted, and none of them had ever killed again. He pointed out that the American Psychiatric Association takes the position that it is impossible to make a future dangerousness assessment with 100 percent certainty. He testified that his study of cases in which a prosecution expert predicted future dangerousness showed that the expert was wrong two-thirds of the time. Dr. Wendell Lee Dickerson, a psychologist, testified that the American Psychiatric Association holds that psychiatrists who, like Dr. Grigson, purport to predict future dangerousness

with a high degree of certainty, "are engaging in practice little short of quackery."

The jury found that Johnson had acted deliberately and with a reasonable expectation that death would result, and that it was probable that Johnson would commit future acts of criminal violence that constitute a continuing threat to society. The trial court sentenced to Johnson to death.

Johnson's conviction and sentence were affirmed on direct appeal. Johnson v. State, 853 S.W.2d 527 (Tex. Crim. App. 1992). The Supreme Court denied certiorari. Johnson v. Texas, 510 U.S. 852 (1993). The Texas Court of Criminal Appeals denied Johnson's application for state habeas relief. Ex parte Johnson, No. 55,377-01 (Tex. Crim. App. Oct. 20, 2004). The district court denied Johnson's petition for federal habeas relief and denied a COA. Johnson v. Quarterman, No. H-05-3581, 2007 WL 2891978 (S.D. Tex. Sept. 28, 2007).

Johnson requested a COA from this court to appeal the denial of relief as to three claims. Based on our "threshold inquiry," consisting of "an overview of the claims in the habeas petition and a general assessment of their merits," Miller-El v. Cockrell, 537 U.S. 322, 327, 336 (2003), this court granted a COA for Johnson's claims that (1) his due process rights under Brady v. Maryland, 373 U.S. 83 (1963), were violated by the State's suppression of evidence that the Fergusons, who testified for the State at trial, had been hypnotized; and (2) his trial counsel rendered ineffective assistance by calling Johnson's brother, Terry, as a witness at the guilt phase of trial. Johnson v. Quarterman, 2008 WL 4155471 (5th Cir. Sept. 9, 2008). We denied a COA for Johnson's claim that the district court erred by refusing to consider the affidavits of attorneys on the issue of whether Johnson's trial counsel rendered constitutionally ineffective assistance, on the ground that it was unnecessary. Id.

The parties submitted supplemental briefs on the merits of the claims for which a COA was granted. Having considered the briefs and based on our

review of the record of the state court trial, and the state and federal habeas proceedings, we conclude that the state court's decision to deny relief on these claims is not based on an unreasonable determination of the facts in the light of the evidence presented, and is neither contrary to, nor an unreasonable application of, clearly established federal law. We therefore AFFIRM the district court's denial of federal habeas relief, for the reasons that follow.

## II.

Johnson is not entitled to federal habeas relief on his claims unless the state court's adjudication of the claims

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The state court's factual determinations "shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

"In reviewing the district court's application of § 2254(d) to the state court decision, we review the district court's findings of fact for clear error and its conclusions of law de novo." Blanton v. Quarterman, 543 F.3d 230, 235 (5th Cir. 2008).

We address Johnson's Brady claim first, and then turn to his claim of ineffective assistance of counsel.

## A.

Johnson argues that the prosecution violated his right to due process by suppressing evidence that the Fergusons, who testified for the State at the guilt-

innocence phase of the trial, were hypnotized. The law governing claims that prosecutors improperly withheld evidence from a defendant is clearly established. See Brady v. Maryland, 373 U.S. 83 (1963). "The Due Process Clause of the Fourteenth Amendment requires prosecutors to disclose to a defendant, on request, any evidence which is favorable and material to the issue of guilt or punishment." Titsworth v. Dretke, 401 F.3d 301, 306 (5th Cir. 2005). "This disclosure requirement imposes a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Id. (internal quotation marks and citation omitted). To establish his Brady claim, Johnson must demonstrate that: "(1) the prosecutor suppressed evidence, (2) favorable to the defense, and (3) material to guilt or punishment." Pippin v. Dretke, 434 F.3d 782, 789 (5th Cir. 2005) (citing Brady, 373 U.S. at 87). "The suppressed evidence is material if there is 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Id. (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).

In 1997, Johnson's state habeas counsel discovered evidence indicating that Mrs. Ferguson had been hypnotized by agents of the Walker County Sheriff's Office on June 10, 1986 (nearly six weeks after the murders on April 30, 1986). An attempt to hypnotize Mr. Ferguson was unsuccessful. Johnson filed a supplemental state habeas application in which he contended that the suppression of this evidence violated his due process rights under Brady and state law, citing Zani v. State, 758 S.W.2d 233 (Tex. Crim. App. 1988).[3]

The state habeas court conducted an evidentiary hearing on the claim and made the following findings and conclusions:

---

[3] Zani deals with the admissibility of hypnotically enhanced testimony under Texas evidence law.

According to the presentation by Petitioner's counsel, the State suppressed from the defense information that two [of the] State's witnesses, Mr. and Mrs. Ferguson, had been hypnotized by agents of the State during the investigation, and that said information was not divulged to the defense prior to trial, and that said hypnotized evidence presented by the State during trial was therefore tainted under the Court of Criminal Appeals decision in Zani v. State, 758 S.W.2d 233.

This court finds:

(a)    In the evidence presented during the habeas corpus hearing, by the ex-District Attorney in charge of this prosecution, and his law enforcement agents, and the trial counsel Hal Ridley, that it was undisputed that Mr. and Mrs. Ferguson did undergo a hypnosis session in June, 1987, and that said witnesses did testify for the State, and that defense counsel Ridley was never told about the existence of this hypnosis enhanced testimony.

(b)    This court finds, therefore, that as a matter of law, relevant and material evidence was, in fact, suppressed from the defense prior to trial, by the State's failure to notify Ridley that hypnosis sessions had been performed upon these State witnesses. See Zani v. State, supra, which requires the State to notify the defense where hypnosis sessions are conducted as part of the State's investigation.

(c)    During the hearing in this case, the State presented evidence from the sheriff's deputy who performed the hypnosis sessions on both Mr. and Mrs. Ferguson, and other witnesses who were involved in this investigation.  It appears that the

sheriff deputy who performed this hypnosis session, Mr. Rick Berger, performed this session at the instruction of Chief Deputy Sheriff Ted Pierce, of the Walker County Sheriff's office, who was in charge of this investigation, and that Mr. Berger did not follow the guidelines recommended by the Court of Criminal Appeals in the Zani decision.

(d)    Mr. Berger was not shown to have the necessary qualifications to perform such hypnosis sessions. No preliminary statement was taken from the witnesses <u>by Berger</u> to determine what the witnesses recalled. The session was apparently tape recorded, but the tape recordings are now missing. There is no showing that the witnesses received any psychological counseling prior to the session, and absent any recorded evidence of said session, this court finds that the hypnosis session was not properly conducted pursuant to the guidelines as set out in Zani v. State, supra, since none of the witnesses had any <u>present recollection</u> of the procedures used during said session.

(e)    Therefore, evidence was suppressed from the defense, and that such evidence was not shown by the State, as required by the law, to be admissible in any Texas trial court proceeding.

(f)    However, the State introduced evidence during the hearing that Mr. Ferguson was not hypnotized, but Mrs. Ferguson was, and that prior to the hypnosis session, Mrs. Ferguson gave a full and complete written statement to <u>other</u> law enforcement agents, which comported in general with her trial testimony. The state has taken the

position that since none of Mrs. Ferguson's testimony was apparently altered by the hypnosis session to the detriment of Petitioner, that the admission of this hypnosis evidence should be considered to be harmless error.

(g)     As to the State's argument that such evidence was not harmful to Petitioner, this court would defer to the Court of Criminal Appeals for further ruling on the issue of "harmless error," since such determination is a question of law, which must ultimately be determined by the Court of Criminal Appeals on review of this habeas corpus action.

Therefore, this court finds that error was committed in that evidence was suppressed from the defense, and that such evidence was not shown to be admissible under the law available at that time, or even now. The trial court will defer any final decisions to the Court of Criminal Appeals as to whether or not the admission of this hypnotically enhanced testimony constitutes reversible error or not, under the harmless error standards applicable to this proceeding.

The Court of Criminal Appeals noted that the trial judge had deferred to it for a determination on a question of law presented in Johnson's supplemental state habeas application. The Court of Criminal Appeals adopted the trial judges findings and conclusions and, based on those findings and conclusions and its own review, found all of Johnson's claims to be without merit and denied relief. Ex parte Johnson, No. 55,377-01 (Tex. Crim. App. Oct. 20, 2004).

The district court observed that the question of whether any error was harmless is legally inapplicable to a Brady claim, because claims of Brady error are not subject to harmless error analysis. Kyles v. Whitley, 514 U.S. 419, 434-35 (1995). Furthermore, the state habeas court did not cite Brady or any other

federal law; the only case it cited was Zani. As a result, the district court found that the state habeas court apparently had analyzed the claim under state law. Accordingly, the district court concluded that it owed no deference under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") to the state court's finding of materiality.

In any event, the district court held that, even if the state habeas court had found that the evidence of hypnosis was material under Brady, such a finding was an unreasonable application of Supreme Court precedent and was not entitled to any deference. The district court stated that Supreme Court precedent clearly established that evidence is material under Brady "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). The district court reasoned that, even assuming that the disclosure of the evidence of hypnosis would have completely destroyed the credibility of the Fergusons' testimony, there was not a reasonable probability that the result of Johnson's trial would have been different.

The district court characterized the Fergusons' testimony as merely providing context for the murders. It stated that, even if they had never testified, the jury still would have heard testimony that two dead bodies were found on the ranch; that both men died from gunshot wounds; and that Johnson returned a .44 caliber handgun to his brother and admitted participating in a double murder. The only significant detail that the jury might not have heard if the Fergusons had not testified was Mrs. Ferguson's observation of the unusual brake light pattern on the truck. The district court concluded that, although this detail, and Johnson's possession of a truck with similar brake lights, strengthened the State's case, it was not a dispositive fact in the light of Johnson's admissions to his brothers and his possession of the murder weapon.

11

The district court concluded that the evidence was, therefore, not material under Brady.

Johnson argues, first, that the district court erred by failing to defer to the state habeas court's determination that the suppressed evidence is material. This contention is without merit. The state habeas court did not cite Brady or federal law in its findings and conclusions, and it deferred to the Court of Criminal Appeals on the question of whether the suppression of the hypnosis evidence was harmless. As the district court correctly observed, harmless error analysis does not apply to Brady claims. Accordingly, we agree with the district court's determination that the state habeas court's finding of materiality was based on state evidence law, and not Brady. The district court therefore did not err by failing to defer to the state habeas court's finding of materiality.

Johnson contends further that the district court applied an incorrect standard of materiality. According to Johnson, the correct inquiry is whether there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact. He argues that the evidence of hypnosis is material under that standard because, if defense counsel had known that the Fergusons had been hypnotized, he could have persuaded the trial court exclude their testimony. In his supplemental brief, Johnson cites cases holding that, when the defense is informed of the use of hypnosis, there are no due process violations. He argues that it is, therefore, logical to assume that if the evidence of hypnosis is suppressed, thus denying the defense the opportunity to challenge it, there are due process problems.[4] In his supplemental reply brief, Johnson argues that the standard for materiality can differ from state to state, depending on state law. He contends that, in a state such as Texas, where the state courts have

[4] Johnson's argument refers to Confrontation Clause violations resulting from the failure to disclose evidence of hypnosis. He did not present a claim for violation of his rights under the Confrontation Clause and did not request or obtain a COA authorizing him to appeal as to any such claim.

12

determined that the prosecution must reveal to the defense even a mere attempt to hypnotize a prospective witness, the failure to do so must be material. Johnson contends that the lack of disclosure deprived him of his right, under state law, to a pretrial hearing on the issue; that he was deprived of the opportunity to make appropriate inquiries of prospective jurors as to their knowledge and predilection as to hypnosis evidence, in order to challenge their fairness to consider such evidence; that he was deprived of the opportunity to secure expert witnesses to challenge the hypnotically enhanced testimony presented, and to confront and cross-examine the State's witnesses before the jury on the reliability of their recollections under hypnosis; and that he was deprived of an opportunity to challenge the hypnotically enhanced testimony on direct appeal.

Contrary to Johnson's assertion, the district court applied the correct standard of materiality: whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bagley, 473 U.S. at 682. Under that standard, the evidence of the hypnosis of Shannon Ferguson and the attempted hypnosis of Bill Ferguson is not material because there is not a reasonable probability that the result of Johnson's trial would have been different had the evidence of hypnosis been disclosed. That is so because the evidence is clear that the hypnosis had no effect on the testimony of Bill and Shannon Ferguson, and thus no "hypnotically enhanced" testimony was presented at trial. The evidence is undisputed that the attempt to hypnotize Mr. Ferguson was not successful. Mrs. Ferguson had described the unusual configuration of the brake lights on the truck to law enforcement officers on the night of the murders, nearly six weeks before she was hypnotized. Her description of the brake lights after hypnosis was the same as before hypnosis. Accordingly, her trial testimony was not enhanced or affected by the hypnosis. Furthermore, as the district court correctly concluded,

even if the Fergusons' testimony had been excluded, there is no reasonable probability that Johnson would have been acquitted.

Deputy Ted Pierce testified at the guilt-innocence phase of the trial that he found out about the distinctive taillight pattern on the night of the murders, when he talked to Bill and Shannon Ferguson. He said that they gave him a description of the truck with the four taillights, and that he put out a "be on the lookout" alert for it. Deputy Pierce testified that late that night or early the following morning, a constable told him that Gary Johnson drove a truck like the one described by Mrs. Ferguson. Allan McCandles, a Walker County deputy sheriff, testified at trial that he heard over the radio on the night of the murders a witness's description of the vehicle involved in the murders as having four large taillights, two on each side, one above the other, and a Koenig-type bed.

At the state habeas evidentiary hearing, the State introduced into evidence a transcript of Ranger Wesley Stiles's interview of Shannon Ferguson on May 4, 1986 (over a month prior to the hypnosis session). In that interview, Mrs. Ferguson described the brake lights on the truck in the same manner that she described them in her testimony at trial. She also stated in the interview, consistent with her testimony at trial, that the day after the murders, she saw a vehicle, like the one she had seen the night before, at Gary Johnson's home.

At the state habeas evidentiary hearing, the State also introduced into evidence a copy of the Walker County Sheriff's Department offense report. It states that Shannon Ferguson described the taillights to Officer Pierce on the night of the murders:

> The vehicle appeared to be a utility truck, similar to a Gulf States truck or a Koenig truck with tool boxes. There were two brake lights in the regular place and there were two more that appeared to be on the tool boxes. All four brake lights were round in shape.

14

The offense report states further that Johnson was a possible suspect as of May 6, 1986 (before the hypnosis in June), because he drove a truck with lights like those described by Mrs. Ferguson.

Mr. Ferguson testified at the state habeas evidentiary hearing that he and his wife were up most of the night after the murders and that all she talked about was the taillights on the truck and that the truck had to be a utility-type vehicle. He testified further that they saw such a vehicle the very next day, and she was convinced it was the same one.

Mrs. Ferguson also testified at the state habeas evidentiary hearing. She stated that she described the configuration of the taillights on the vehicle on the night of the murders; that she saw a vehicle with the same light configuration parked at a trailer house the following day; and that she gave the same information to Ranger Stiles when he interviewed her on May 4, 1986. Mrs. Ferguson testified that she did not remember anything under hypnosis that she had not remembered before, and that she provided no new information to the interviewer; and, therefore, the hypnosis had no effect whatsoever on her trial testimony.

Ridley, Johnson's trial counsel, testified at the state habeas evidentiary hearing that, if he had known that the Fergusons had been hypnotized, he would have tried to find out what they were saying prior to the hypnosis to see if it was consistent with what they said afterward. He said he possibly would have moved for a hearing and would, at least, have interviewed the person who hypnotized them. Ridley testified that the major point of Shannon Ferguson's testimony was the configuration of the lights on the back of the truck. He acknowledged that she had talked about those lights in her statement to the police before she was hypnotized, and that she had said she observed a vehicle with the same type of taillights at Gary Johnson's trailer the day after the murders.

Rick Berger, who performed the hypnosis, testified that Mr. Ferguson was not susceptible to hypnotism and that when he checked "yes" on the form to indicate that new information was obtained as a result of hypnosis of Shannon Ferguson, he meant that it was new information to him, not that it had not already been provided to law enforcement.

Thus, the evidence–both at trial and at the state habeas evidentiary hearing–is clear that the hypnosis had no enhancing effect on the Fergusons' testimony at trial. Accordingly, the suppressed evidence of the hypnosis was not material and Johnson was not prejudiced by the State's failure to disclose it. Even if we assume that the Fergusons' testimony would have been excluded by the state court had the evidence of hypnosis been disclosed to the defense, it would not have affected the outcome of the trial in the light of the substantial other evidence of Johnson's guilt. Indeed, the Fergusons' testimony centered altogether on establishing by circumstantial evidence that Johnson was present when the murders occurred, a fact that was hardly disputed at trial; the focus of the defense was who did the actual killing.

Because the evidence of hypnosis was not material, within the meaning of Brady, the decision of the Texas Court of Criminal Appeals denying relief on Johnson's Brady claim, was not contrary to, or an unreasonable application of, clearly established federal law.

We now turn to consider Johnson's ineffective assistance of counsel claim.

### B.

Johnson argues that he was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments when his trial counsel called Johnson's brother, Terry, as a witness, knowing that Terry would testify that Johnson had shot both of the victims. To establish a Sixth Amendment violation, Johnson must prove that his counsel rendered deficient performance and that the deficient performance prejudiced his defense. Strickland v.

16

Washington, 466 U.S. 668, 687 (1984). To receive federal habeas relief on his ineffective assistance claim, Johnson must establish that the decision of the Texas Court of Criminal Appeals is either contrary to, or an unreasonable application of, Strickland. See Blanton, 543 F.3d at 235.

Terry was charged with capital murder along with Johnson. Terry was arrested on May 20, 1988. That same day, he gave a written statement to law enforcement authorities implicating his brother, Gary Johnson, in the shooting of both victims. On June 23, 1988, Terry spoke to Johnson's trial counsel, Ridley. During that interview, Terry told Ridley that he had made a deal with the prosecutors and that Gary Johnson had killed both of the victims. On July 18, 1988, Terry entered into an agreement with the State, pursuant to which the State waived the death penalty and Terry agreed to plead guilty to murder, for which he would be sentenced to a term of years to be decided after full review of the case.

In his opening statement for the defense, made after the State had rested its case-in-chief without calling Terry as a witness, Ridley asserted that Terry, acting alone, had murdered both of the victims, and that Ricky, Randy, and Tracey testified as that did out of fear of what Terry would do to them or their families. Ridley called Terry as one of the witnesses for the defense. Terry denied firing any shots, and testified that Gary shot both of the victims. In his lengthy testimony, Terry also admitted that he gave a statement to police, implicating his brother Gary, within twenty to thirty minutes after he was arrested, in order to spare himself from the death penalty. On cross-examination, he testified that Gary's favorite expression was "kill them all, let God sort them out."

At the state habeas evidentiary hearing, Ridley testified that he was fully aware that Terry had maintained from the beginning that Gary Johnson did all of the shooting. Ridley testified that he had anticipated that Terry would testify

for the prosecution in its case-in-chief. When the State rested without having called Terry, Ridley testified that he "was concerned because I already felt there was sufficient evidence to implicate Gary in both killings, and what I was trying to do was pin the blame, quite frankly, on Terry Johnson." Ridley explained that he was surprised by Randy Johnson's trial testimony, because in statements made to Ridley prior to trial, Randy had exculpated Gary Johnson and stated that Terry had killed both of the victims. Ridley believed that Randy's testimony was the most harmful evidence presented by the State. He wanted to show the jury that Terry had made a deal with the State, and he wanted the details of the deal before the jury. He also wanted to show that Terry was not a credible witness, and that he had sold out his own brother to save his neck. Ridley testified that he wanted the jury to see Terry because he thought that was Gary Johnson's best chance for acquittal. He explained that, as a trial lawyer, sometimes you have to get into some things that hurt you in order to get some things that also help you, and that he really thought there was a chance of defeating the capital murder charge against Gary Johnson by showing that he was an accomplice of Terry in the murders. Ridley pointed out that Louie John Brown and Bruce Edward Davis testified that Terry had told them that he had committed both of the murders. Ridley stated that, even if he had not called Terry and had only called Brown and Davis, the State might have called Terry in rebuttal as its "smoking gun" witness. He explained that he did not "want Terry Johnson, of all people, to be the last person they heard from in the case."

The state habeas court found that Ridley called Terry as a witness for three purposes: (1) to impeach Terry as to his credibility and show him to be the perpetrator who made a deal for a life sentence; (2) to get this information before the jury for use as mitigation against a death sentence; and (3) to try to get an accomplice witness instruction. The state habeas court ruled:

> The court finds that Terry Johnson testified that Petitioner killed both individuals. The court also finds that by putting Terry Johnson on the stand, Petitioner was able to inform the jury that Terry Johnson had made a deal for life imprisonment with the State and impeach Terry Johnson by two witnesses who stated Terry Johnson told them he had committed both killings. . . . The court also finds the combination of Terry Johnson's testimony and the impeachment by two witnesses who testified Terry Johnson admitted the killings is a reasonable trial strategy.

> Therefore, the court finds that the decision to put Terry Johnson on the witness stand for the purpose of impeaching him and showing his relatively lighter sentence of life, was a decision of strategy that does not fall below the level of competence of trial counsel.

The state habeas court also observed that Johnson's guilt was established through Randy's testimony that Johnson admitted shooting one victim and putting a gun in the mouth of the other, and the testimony of the medical examiner that the second victim had died from a gunshot wound inflicted by a gun near the victim's mouth. The state habeas court also held that the decision to put Terry on the stand did not harm Johnson. Instead, it stated that the fact that Terry made a deal for life was a strike against the death penalty for Johnson.

The district court pointed out that Johnson himself, in his pleadings and briefs, had acknowledged that the testimony of his brothers Randy and Ricky, and the testimony of the medical examiner, created a strong inference that Johnson shot both of the victims. The district court stated that Johnson's counsel was left with the options of trying to discredit the testimony about Gary's admissions to his brothers or of arguing that, while Johnson put the gun in the second victim's mouth, someone else pulled the trigger. Instead, counsel chose to offer the jury the alternative theory that Terry shot the victims and sold

out his brother to avoid a death sentence. In order to accomplish this goal, counsel called Terry as a witness to try to discredit him. The district court concluded that the fact that, in hindsight, the strategy was unsuccessful does not change the fact that it was a legitimate strategic choice by counsel.

Johnson acknowledges that Ridley's decision to call Terry as a witness was a strategic decision, but he argues that the strategy was so unsound that it is unconstitutional. He acknowledges that the testimony of his brothers, Randy and Ricky, could be taken as establishing that he (Johnson) admitted having committed both murders, but he asserts that their testimony was not clear. He argues that calling Terry to impeach Terry's credibility and show Terry to be the perpetrator who made a deal for a life sentence could not have benefitted him at the guilt-innocence phase because, even if Ridley had been successful in impeaching Terry, the testimony still would have resulted in demonstrating that he (Johnson) was guilty as a party. He contends that putting Terry on the stand for the purpose of getting an accomplice witness instruction was not a reasonable strategy, because even if he had been successful, the State could easily point to the testimony of Randy and Ricky as corroborating Terry's testimony. Finally, he argues that calling Terry as a defense witness to present mitigating evidence was of no benefit to him at the guilt phase of trial. Johnson argues that confidence in the outcome is undermined because Terry's testimony turned the case from a weak punishment case to a strong one. He notes that he had one fifteen-year-old misdemeanor conviction, no felony convictions, and no history of violent behavior. Furthermore, there was no psychiatric testimony that he had any psychotic tendencies. He therefore contends that it is extremely doubtful that the jury would have found him to be a future danger to society without Terry's testimony.

In support of his ineffective assistance claim, Johnson attached to his federal habeas petition the affidavits of five attorneys experienced in Texas

capital law. All five attorneys stated in their affidavits that no reasonable trial counsel would have used the strategy that Johnson's trial counsel used in this case.[5] The district court refused to consider the affidavits, because the proffered expert testimony did not assist the court within the meaning of Rule 702 of the Federal Rules of Evidence. The district court explained:

> This court is intimately acquainted with the legal standards governing ineffective assistance of counsel claims. Expert testimony purporting to tell the court how those legal standards apply to the facts of a particular case invade the court's province as trier of the law, and are not helpful to the court in determining the facts of the case. Because the proposed expert testimony both moves beyond the appropriate boundaries of expert testimony and is unhelpful to the court in its role as trier of fact, the affidavits will not be considered.

We conclude that, for the reasons given by the district court, the district court did not abuse its discretion in refusing to consider the attorney affidavits. We agree with the reasoning of the Eleventh Circuit in Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998):

> [I]t would not matter if a petitioner could assemble affidavits from a dozen attorneys swearing that the strategy used at his trial was unreasonable. The question is not one to be decided by plebiscite, by affidavits, by deposition, or by live testimony. It is a question of law to be decided by the state courts, by the district court, and by this Court, each in its own turn.

_____

[5] One of the "expert" affidavits was signed by Roy Greenwood, who was appointed as co-counsel for Johnson on direct appeal, along with Ridley (Johnson's trial counsel). Greenwood signed Johnson's brief on direct appeal. In that brief, in connection with his argument that the trial court erred in failing to give an accomplice witness instruction, he argued that calling Terry as a witness was crucial to the defense, especially because the State refused to call Terry. He stated in that brief that he "simply had to have the jury view Terry Johnson, and review his story, and then be able to impeach brother Terry with other admissions, threats, misstatements, etc., in order to allow the jury to arrive at the truth as to the culpability for these murders."

21

With respect to the merits of Johnson's ineffective assistance claim, we agree with the district court's assessment that the state court did not unreasonably apply Strickland in denying relief. Although counsel's decision to call Terry as a witness ultimately was not a successful strategy, the state court did not unreasonably apply Strickland in determining that it was not deficient performance. Even assuming that it was deficient performance, the state court's determination that Johnson was not prejudiced is neither contrary to, nor an unreasonable application of, Strickland. Terry's testimony did not add significantly to the substantial other evidence of Johnson's guilt that was already before the jury. As the state habeas court found, Randy had already testified that Johnson told him that he (Johnson) shot "the one with the gun" and that they caught "the other man" and that he (Johnson) stuck the gun in his mouth. Because the state courts did not unreasonably apply Strickland, the district court did not err in denying federal habeas relief on Johnson's ineffective assistance of counsel claim.

### III.

For the foregoing reasons, we AFFIRM the judgment of the district court denying Johnson's petition for federal habeas relief.

AFFIRMED.