# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 14, 2008

Charles R. Fulbruge III
Clerk

No. 07-70026

Curtis MOORE

Petitioner-Appellant

v.

Nathaniel QUARTERMAN, Director,
Texas Department of Criminal Justice,
Correctional Institutions Division

Respondent-Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Curtis Moore was convicted of capital murder in Texas and sentenced to death. After his conviction and sentence were affirmed on direct review, Moore unsuccessfully sought state and federal habeas relief. Following the Supreme Court's decision in Atkins v. Virginia,[1] Moore sought state habeas relief on a mental retardation claim. The state courts rejected his claim on the merits. Moore then filed a motion for authorization to file a successive habeas

---

[1] 536 U.S. 304 (2002).

application based on the Atkins claim, which we granted.[2] The district court denied Moore relief on his claim,[3] and denied Moore's application for a Certificate of Appealability (COA). Moore now seeks a COA from this court. We deny his application for a COA.

Under 28 U.S.C. § 2253(c)(2), a habeas petitioner must obtain a COA in order to appeal the district court's denial of relief. "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'"[4] "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[5] "To make such a showing, a petitioner 'must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.'"[6]

As the Supreme Court has explained, "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits. We look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason."[7]

---

[2] See In re Moore, No. 07-10168, 217 Fed. App'x. 350 (5th Cir. Feb. 9, 2007) (unpublished).

[3] See Moore v. Quarterman, No. 4:07-CV-077-A, 2007 WL 1965544 (N.D. Tex. July 6, 2007).

[4] Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

[5] 28 U.S.C. § 2253(c)(2).

[6] ShisInday v. Quarterman, 511 F.3d 514, 520 (5th Cir. 2007) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

[7] Miller-El, 537 U.S. at 336.

In Atkins, the Supreme Court held that the Constitution prohibits executing the mentally retarded.[8] "The Court . . . left 'to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences,' but cited with approval the American Association on Mental Retardation ('AAMR') definition of mental retardation."[9] The Texas courts have adopted a test for mental retardation that mirrors the AAMR definition, and thus require an applicant claiming mental retardation to demonstrate (1) significantly subaverage general intellectual functioning; (2) accompanied by related limitations in adaptive functioning; and (3) onset prior to the age of eighteen.[10] "To state a successful claim, an applicant must satisfy all three prongs of this test."[11]

Because the state court decided Moore's Atkins claim on the merits, the state court decision receives AEDPA deference.[12] The district court concluded that the state court judgment could not be disturbed:

> In short, having independently reviewed all of the evidence, the court concludes that, while there is evidence indicative of perhaps mild mental retardation, there is ample evidence that Moore is not mentally retarded. Consequently, the state court's finding that Moore is not mentally retarded was not unreasonable. See 28 U.S.C. § 2254(d)(2). Moreover, these findings are presumed to be correct unless controverted by Moore with clear and convincing evidence.

---

[8] See 536 U.S. at 321 ("Construing and applying the Eighth Amendment in the light of our 'evolving standards of decency,' we therefore conclude that such punishment is excessive and that the Constitution 'places a substantive restriction on the State's power to take the life' of a mentally retarded offender." (quoting Ford v. Wainwright, 477 U.S. 399, 405 (1986))).

[9] In re Salazar, 443 F.3d 430, 432 (5th Cir. 2006) (quoting Atkins, 536 U.S. at 317).

[10] Id.; see Ex parte Briseno, 135 S.W.3d 1, 7 (Tex. Crim. App. 2004).

[11] Salazar, 443 F.3d at 432.

[12] See 28 U.S.C. § 2254(d), (e).

See 28 U.S.C. § 2254(e)(1). Moore has failed to meet that burden here.[13]

The court also explained that it "views the issue of Moore's mental capacity as one of fact. Even if viewed as a mixed issue of fact and law, the state-court decision on this issue was not contrary to or otherwise involved an unreasonable application of clearly established federal law."[14]

Moore presented a thin case of mental retardation. Moore's IQ has been tested numerous times: as reported by Moore, a WISC-R test in 1980 yielded a full-scale score of 68;[15] a WISC-R in 1981 a full-scale score of 72; a WISC-R in 1984 a full-scale score of 72;[16] a WAIS-R in 1996 a full-scale score of 76; a WAIS-III in 2003 a full-scale score of 63; and, finally, a WAIS-III in 2004 a full-scale score of 76. While these scores could support a finding of subaverage intellectual functioning, the scores can also sustain a finding that Moore is not retarded. Furthermore, there was conflicting expert evidence introduced at the state habeas proceeding concerning these scores; that is, while some expert opinion supported a finding of subaverage intellectual functioning, there was other expert evidence indicating that Moore did not suffer from such functioning and that he underperformed on at least some of the tests.

The evidence as to deficits in adaptive functioning cuts both ways, and the evidence in support of a finding of adaptive limitations is not without problems. Although Moore presented affidavits from those who knew him and the expert

---

[13] Moore, 2007 WL 1965544, at *6

[14] Id. at *6 n.13.

[15] The district court, based on the trial court findings, reported this score as 67 and not 68. Id. at *5 & n.8. The difference is not material to the outcome.

[16] Moore argues that the result of this test should be heavily discounted because the examiner and circumstances of the test "are unknown and the report is not in evidence." Discounting the result does not change the outcome.

opinion of Dr. Rosin describing deficits, there was also credible evidence, both expert and not, that Moore did not suffer from deficits in adaptive functioning. Given the conflicted nature of the evidence, and the weaknesses in the evidence in Moore's favor, Moore cannot overcome the state court's findings.

Although Moore's claim founders on the first two elements of the mental retardation analysis, we also note that the evidence of onset before age 18 was conflicted.  On this record, reasonable jurists could not disagree with the able district court's determination that Moore's Atkins claim is beyond the reach of AEDPA relief.

Moore's application for a Certificate of Appealability is DENIED.