# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 1, 2012

No. 11-70017

Lyle W. Cayce
Clerk

RAMON TORRES HERNANDEZ,

Petitioner-Appellant,

versus

RICK THALER, Director,
Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent-Appellee.

Appeal from the United States District Court
for the Western District of Texas
No. 5:08-CV-827

Before DAVIS, SMITH, and SOUTHWICK, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Ramon Hernandez filed a federal habeas corpus action to challenge his 2002 conviction of capital murder and his sentence of death. The district court

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-70017

denied the petition and denied a certificate of appealability ("COA"), so Hernandez asks this court to grant one.  We deny the application.

I.

Hernandez was indicted on one count encompassing several crimes, including killing Rosa Rosado (a) as part of a common scheme or course of conduct along with killing two middle school girls in 1994, (b) in the course of an aggravated sexual assault, (c) in the course kidnaping her, and (d) in the course of robbing her.  Relating to the common-scheme aspect of the one-count indictment, two middle school girls, Sarah Gonzales and Priscilla Almares, were abducted in San Antonio in December 1994.  The next day, their bodies were found in the brush by a road.  Both had been sexually assaulted and asphyxiated.  An anal swab of Gonzales found sperm, but a vaginal slide found none.  DNA testing could not match the sperm at the time, but a 2001 test showed Hernandez's DNA was a match.

Relating to the remaining parts of the indictment, Rosado disappeared in San Antonio in March 2001.  The facts are in dispute, but according to Hernandez's confession, while driving with his girlfriend, Abel Abdygapparova, Hernandez, and Santos Minjarez saw Rosado at a bus stop. Minjarez tried to grab her purse, and when she resisted, he pulled her into the car and covered her head, and Hernandez drove away.  They stopped at Hernandez's house to get tape to bind Rosado, gagged her, and went to a motel, where she was raped and killed.  Her body was cleaned using bleach and a douche.  Abdygapparova was sent to get a shovel, which was used to bury the body.  Hernandez and Abdygapparova took Rosado's possessions and items used to cover her and burned them or dispersed them by tossing them from the car as they drove after her death.

Two crucial statements were made to police.  Abdygapparova provided a written statement of the abduction, robbery, sexual assault, and murder of

2

No. 11-70017

Rosado. She also led police to the body, the motel where the events occurred, and the car she had sold after using it in the crime. Although Hernandez initially denied participating and asked for an attorney, thus ending his first interrogation, the next day he asked to speak to the detectives again. He gave a statement confessing to participation in the crime but saying it was Minjarez who had raped and killed Rosado.

A jury found Hernandez guilty of the crimes charged in the indictment, and he received a sentence of death.

## II.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal appellate courts do not obtain jurisdiction over a habeas case unless a COA has been granted. *Moore v. Quarterman*, 517 F.3d 781, 783 (5th Cir. 2008). The district court denied a COA, so for this court to grant one, we must find that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (internal quotation marks omitted). Hernandez raises several arguments on appeal, but none deserves encouragement to proceed.

Hernandez argues that his confession was involuntary and thus inadmissible. He was first questioned after Detective Carian arrested him and read him his rights. During that questioning, Hernandez denied participating in the murder of Rosado and eventually asked for his lawyer, at which point the interrogation ceased.[1]

---

[1] Hernandez mentions in his brief that his initial requests for a lawyer were ignored, but he does not argue it here. He raised this issue at trial in an attempt to block admission of the confession, but the point was rejected.

3

No. 11-70017

Hernandez was then booked into jail and given Prozac. He said that he then asked for a doctor, and when he became insistent, the mental health social worker called a detention officer. Hernandez also claims that he was experiencing a panic attack from then through his interrogation by Carian, because he was suffering from withdrawal from the drug Klonopin. He had been taking Klonopin for PTSD and anxiety disorder until his doctor recently tried to wean him off it. Hernandez testified that he resisted the reduction of Klonopin by getting some from his uncle, but eventually that ran out, and he began experiencing withdrawal. The trial court denied the motion to suppress, and each subsequent court has found the confession voluntary.

Custodial statements are admissible if the accused (1) initiated further discussion with the police and (2) knowingly and intelligently waived the previously invoked right. *Smith v. Illinois*, 469 U.S. 91, 95 (1984). Hernandez's claim that he asked for the doctor but was instead brought to speak with detectives is an argument that he did not initiate that discussion. The mental health worker testified, however, that Hernandez came to her and said he wanted to get something off his chest. The booking sergeant the social worker contacted, who then called Carian, testified that he would not have known Hernandez wanted to speak with Carian unless Hernandez had identified Carian. Furthermore, when detectives arrived to speak to Hernandez, he did not act surprised to see them or resist speaking, and as soon as Carian asked him "what's up," Hernandez began discussing the case.

To counterbalance that weighty evidence from multiple witnesses, Hernandez offers only his testimony that he asked for a doctor. Because the trial court's credibility determination has already gone against him, in light of the totality of the circumstances, reasonable jurists could not disagree over whether Hernandez initiated further discussion with the police.

Nor could reasonable jurists disagree on whether Hernandez's waiver was

No. 11-70017

knowing and voluntary.  Contesting the voluntariness of a confession requires the defendant to show—looking at the totality of the circumstances—that but for the police coercion, he would not have confessed.  *Muniz v. Johnson*, 132 F.3d 214, 219 (5th Cir. 1998).  Hernandez's argument that his confession was involuntary revolves around his suffering Klonopin withdrawal.  He argues that he confessed because it was the only way he would get more Klonopin.

For a confession to be rendered involuntary because of mental condition, there must be coercive activity by the police.  *Colorado v. Connelly*, 479 U.S. 157, 165 (1986).  No evidence suggests the police withheld medical treatment.  First, according to Hernandez's physician, Dr. Stowe, Prozac should have been enough to treat him, and Hernandez was given Prozac.  Also, neither detective had authority to withhold medical treatment at the jail.  Despite Hernandez's testimony that he was having an anxiety attack during the first interview and was sweating profusely, shaking uncontrollably, and felt blood pulsing through his hands, no witnesses testified to Hernandez's showing outward symptoms.  Additionally, his vitals were normal when checked on his admittance to jail.

The only evidence supporting Hernandez's claim that he was experiencing withdrawal symptoms was his and his mother's testimony that when he called her, he sounded as though he was having a panic attack.  Again, the trial court, which had the chance to weigh the witnesses' credibility in live testimony, found Hernandez less credible.  Considering the totality of the circumstances, reasonable jurists could not disagree regarding the voluntariness of the confession.

Hernandez also contends that he received ineffective assistance of counsel because his trial counsel did not develop the claim that his confession was involuntary on account of Klonopin withdrawal.  To succeed on a claim of ineffective assistance, the defendant must show deficient performance and that the performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Taking AEDPA deference into account, the question becomes whether

5

there is any reasonable argument that counsel satisfied the *Washington* standard. *Premo v. Moore*, 131 S. Ct. 733, 740 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770 (2011)).

Neither prong of *Washington* is satisfied. Performance is deficient where, given all the circumstances, it falls below an objective standard of reasonableness. *Washington*, 466 U.S. at 688. Professional norms play a role in the determination, but overall there are multiple ways effective assistance can be provided, and the court's examination must be highly deferential in favor of counsel's having been effective. *Id.* at 689-91. Part of being effective counsel includes investigating substantial lines of defense. *Id.* at 680-81. Demonstrating prejudice requires the defendant to show that but for that objectively unreasonable misconduct of his counsel, the result of the proceeding would have been different. *Id.* at 694.

Hernandez's trial counsel conducted an appropriate investigation and reasonably did not pursue the withdrawal defense. Nothing in Hernandez's medical record indicates that he was experiencing Klonopin withdrawal; the record shows—to the contrary—that he had been successfully weaned off the drug. Additionally, none of the witnesses gave any indication that Hernandez was displaying symptoms of Klonopin withdrawal. Finally, Hernandez never told his trial counsel he was experiencing withdrawal symptoms during questioning. At the suppression hearing, counsel demonstrated that he had reviewed Hernandez's medical records by asking cross-examination questions about Hernandez's medical condition, but based on the evidence provided to Hernandez's trial counsel, he reasonably did not find that arguing that the confession was involuntary because of Klonopin withdrawal was a viable defense.

Nor can Hernandez demonstrate prejudice. All the previously described evidence weighed in favor of finding the confession voluntary. Hernandez's vitals upon entering prison showed no Klonopin withdrawal, no witness recalled

No. 11-70017

any visible symptoms, and there is nothing besides Hernandez's own testimony to suggest the police deliberately withheld Klonopin to obtain a confession. Though Hernandez was given Klonopin after he confessed, he admitted that he specifically requested it, and his testimony suggested he believed he could have gotten any drug that he could convince the prison staff would keep him calm. With the evidence against Hernandez, even if counsel had presented the medical evidence and testimony regarding Klonopin withdrawal, Hernandez cannot show a substantial probability that the result would have been different.

## III.

Hernandez maintains that his counsel was ineffective for not arguing that the statute under which he was convicted of engaging in a common scheme by murdering the school girls and Rosado was unconstitutionally vague as applied to him.  Because Hernandez's claim is for ineffective assistance of counsel, the question on appeal is whether his lawyer should have argued, in a motion to quash, that the law was unconstitutionally vague as applied to Hernandez.  The Court of Criminal Appeals held that Hernandez's argument was not cognizable in a pretrial motion to quash the indictment, because the argument relied on evidence from the trial, and one can quash only indictments that are insufficient on their face.  A federal habeas court is bound by a state court's interpretation of state law and so generally cannot second-guess such state court determinations.[2]

Attempting to defeat the argument that Texas courts procedurally bar such a claim, Hernandez reminds us that only firmly established and regularly followed state procedural rules will prevent federal review. *Ford v. Georgia*, 498

---

[2] *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004) ("[W]e cannot review the correctness of the state habeas court's interpretation of state law.").

No. 11-70017

U.S. 411, 423-24 (1991). *Ford* does not help Hernandez, however, because this procedural bar is regularly applied. The Texas court cited multiple cases that say a motion to quash cannot be supported by evidence.[3] Even if in *Corwin v. State*, 870 S.W.2d 23 (Tex. Crim. App. 1993) the court considered the question on the merits rather than dismissing it according to the procedural bar, Hernandez has not provided any other cases in which the procedural bar was so bypassed. Occasional lapses in an otherwise regularly applied rule do not invalidate a state's procedural bar.[4] Because Texas precedent shows that Texas courts regularly find such claims barred, *Ford* offers Hernandez no support. Thus, his attorney was not ineffective for deciding against raising this claim in favor of presenting a different argument he believed was more meritorious.

IV.

Hernandez avers that his trial counsel was ineffective for not objecting to the prosecutor's statement during closing that suggested the victim's families would want a death sentence. During the punishment phase of trial, Hernandez called a string of family members as witnesses who pleaded that his life be spared. In its closing arguments at the punishment phase, the prosecution responded to the emphasis on that testimony by saying:

> And I respectfully suggest to you, and I want to commend all these folks for how well they behaved throughout this trial. And don't you know that if they could, they would stand up here and cry and tell you what the believe the proper answer to those questions is, are?

---

[3] *E.g., State v. Rosenbaum*, 910 S.W.2d 934, 948 (Tex. Crim. App. 1994) (dissenting op. adopted on reh'g); *Woods v. State*, 153 S.W.3d 413, 415 (Tex. Crim. App. 2005); *Carpenter v. State*, 477 S.W.2d 22, 23 (Tex. Crim. App. 1972).

[4] *See Dowthitt v. Johnson*, 230 F.3d 733, 752 (5th Cir. 2000) (noting a procedural bar was previously held adequate because it was "strictly or regularly applied evenhandedly to the vast majority of similar claims" (quoting *Corwin v. Johnson*, 150 F.3d 467, 473 (5th Cir. 1998))).

No. 11-70017

Under Texas law, the wishes of the victim's family regarding the defendant's punishment are not admissible. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003). Therefore, if this comment was indicating that the families would want the death penalty, then it was objectionable.[5] The question under AEDPA becomes whether there is an objectively reasonable rationale that would explain why trial counsel did not object. *See Premo*, 131 S. Ct. at 740.

The district court correctly noted that there was an objectively reasonable rationale for not objecting to the prosecutor's passing reference. The main thrust of Hernandez's case in the punishment phase was the emotional testimony of his family's pleading for his life. Defense counsel may have thought that objecting to a passing emotional argument would have undermined the legitimacy of his own emotional appeals. The jury might have found it disingenuous to make emotional arguments and then complain when the other side tries to do the same. Counsel can choose not to make certain objections for strategic reasons to avoid focusing the jury's attention on those arguments. The court was reasonable in believing that Hernandez's lawyer may have weighed the effect of making an objection and determined that because the statement was not especially harmful, drawing additional attention to it would do more to damage his case than to benefit it.

Although Hernandez argues that *Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999), directs us to determine that his counsel made no strategic decision worthy of deference, *Moore* is a pre-AEDPA opinion. *Id.* at 590-91. AEDPA grants state court determinations more deference. Thus, instead of refusing to recognize counsel's actions as a tactical decision any time this court feels there is not enough record evidence that counsel made a considered tactical choice, a

---

[5] The Court of Criminal Appeals determined that the prosecutor was not necessarily referencing the families of the victims with this comment. If he was not, then the statement was not even objectionable. But for the reasons provided, even if the comment did reference the victims' families, counsel's failure to object is not ineffective assistance.

No. 11-70017

federal court considering a habeas petition can grant relief only where the state-court adjudication resulted in a decision that is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See id.* The state habeas court was not unreasonable in concluding that Hernandez's defense counsel's not objecting to that passing comment was an appropriate tactical decision.[6]

Even if counsel was deficient in not objecting, Hernandez cannot show prejudice, which is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Harrington*, 131 S. Ct. 770, 787 (2011). Showing that the errors had some conceivable effect is not enough; the error must be so serious that it deprived the defendant of a fair trial the result of which was reasonable. *Id.* at 787-88.

The evidence against Hernandez at the punishment phase was already substantial. As the district court explained, the evidence established beyond a reasonable doubt that

> (1) petitioner participated in the abduction and robbery of Rosado, (2) petitioner stood guard while Minjarez sexually assaulted Rosado, (3) petitioner was present at the motel with Minjarez when Rosado was killed, (4) petitioner directed Abdygapparova to purchase the shovel used to bury Rosado's body, (5) petitioner had previously been convicted, pursuant to a guilty plea, of burglary with intent to commit sexual assault in connection with an incident in which petitioner lured his victim's husband away from home, locked his victim's husband in petitioner's apartment, and then went back to sexually assault the victim, (6) petitioner participated in numerous burglaries, at least one of which resulted in petitioner serving a

---

[6] Hernandez argues that an instruction could have cleared up any misunderstanding as to why only the defense can present emotional appeals regarding the proper punishment. But it is not unreasonable that defense counsel and the court may have different opinions on how much impact the objection will have on the jury. The court may have thought an instruction explaining the law would fully resolve the matter, but the defense attorney may have felt the jury would discount his witnesses' testimony after the objection, despite an explanatory instruction. Thus, just because the court could have made an explanatory instruction to the jury does not mean the lawyer was ineffective for refusing to object.

No. 11-70017

prison sentence and another of which involved petitioner leading police on a dangerous, high speed, chase, (7) [petitioner] deposited his semen inside the rectum of a twelve year old girl only hours before her lifeless body was found beside that of her equally battered thirteen-year-old cousin "dumped" in the high brush in an isolated location only days before Christmas, (8) the girls' bodies and Rosado's body revealed all three had been bound, severely beaten about the head and face, violently sexually assaulted, and asphyxiated in a manner suggesting they had been unable to offer much resistance as they were strangled to death, (9) petitioner had come very close to escaping from the BCADC only weeks before the start of his trial, and (10) petitioner had never expressed any sincere remorse or contrition for his role in any of the three abductions, rapes, or murders.

Memorandum opinion and order denying relief, at 124-25.

There was also mitigating evidence, including the traumatic death of Hernandez's father when Hernandez was a teenager and the emotional pleas of his family. The first mitigating factor, however, was weakened by evidence that Hernandez engaged in delinquent behavior and fathered children out of wedlock before his father was killed. Moreover, the jury likely already believed that the victim's families wanted the man who killed their loved ones executed. Hinting that fact to the jurors does not tell them anything they did not already know. There is no reasonable probability that an instruction telling the jury to disregard the suggestion that the victim's families wanted Hernandez executed would have resulted in a different sentence.

## V.

Hernandez argues his appellate counsel was ineffective for not complaining on appeal that the trial court should have admitted either Abdygapparova's written statement or hearsay testimony by Carian under the doctrine of optional completeness. To succeed on a claim of ineffective assistance of appellate counsel, a defendant must satisfy the two-prong *Washington* test. *Smith v. Robbins*,

No. 11-70017

528 U.S. 259, 285 (2000). The district court found two reasons why the failure to raise this objection was not ineffective assistance: (1) Counsel believed the error was not properly preserved, and (2) any error would have been harmless.

First, the district court found that it was not unreasonable for the appellate lawyer to conclude that the error had not been properly preserved. For a complaint to be preserved for appellate review, the record has to show there was a timely objection, request, or motion that stated, with particularity, the grounds for the requested ruling unless it is evident from context. TEX. R. APP. P. 33.1(a). The doctrine of optional completeness states:

> When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence, as when a letter is read, all letters on the same subject between the same parties may be given. "Writing or recorded statement" includes depositions.

TEX. R. EVID. 107.

The record shows that trial counsel never mentioned the rule of optional completeness when requesting that the court admit the statement. If, however, the context makes clear that optional completeness was the basis for the objection, it is still preserved. In context, the trial lawyer's arguments show he was objecting to an allegedly false impression provided by Carian's testimony under the doctrine of optional completeness. Carian testified that he told Hernandez all the information he had from Asel's statement when interrogating Hernandez. Hernandez's counsel tried to elicit that Carian had not told him that Asel did not say in her statement that Hernandez killed or raped Rosado. He explained that the purpose of that line of questioning was to correct what he felt was a false impression conveyed to the jury that Asel had told police that Hernandez, her boyfriend, had murdered Rosado.

12

No. 11-70017

Thus, counsel made it evident that he was intending to correct what he felt was a false impression left by incomplete disclosure of Asel's previous statement to the police by seeking to have the rest of the statement admitted. Such a situation easily implicates the rule of optional completeness and was enough for the trial court to become aware that that was the basis of the objection.

Hernandez's attorney was not deficient, however, because he was justified in believing any error resulting from not admitting the rest of the statement was harmless. Appellate advocates research all available arguments and determine which are most likely to bring success, rather than raising every non-frivolous contention. *Smith*, 528 U.S. at 288. Had the remainder of Abdygapparova's statement been admitted, it would not have helped exonerate Hernandez. The statement discussed Hernandez's extensive participation in the crime. It includes his telling Abdygapparova to get a shovel (though Rosado was still alive), she asks whether they killed her when told Rosado is gone, and she was not in the room when Rosado was killed, so she cannot say whether Hernandez killed Rosado. The exchange between Abdygapparova and Minjarez, in which she asked, "Did you kill her?," does not plainly indicate whether she was asking Minjarez whether he did it or whether, instead, he and Hernandez did it. Moreover, Hernandez's own statement reiterated his extensive participation.

The Texas law of parties further supports the harmlessness of refusing to admit Abdygapparova's full statement:

> (a) A person is criminally responsible for an offense committed by the conduct of another if: (1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense; (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or (3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable

No. 11-70017

effort to prevent commission of the offense.

> (b) If, in the attempt to carry out a conspiracy to commit one fel-
> ony, another felony is committed by one of the conspirators, all con-
> spirators are guilty of the felony actually committed, though having
> no intent to commit it, if the offense was committed in furtherance
> of the unlawful purpose and was one that should have been antici-
> pated as a result of the carrying out of the conspiracy.

TEX. PENAL CODE ANN. § 7.02 (West 2003). Thus, even if Hernandez did not murder Rosado, he could be convicted if he aided in the ways described above.

With all the evidence of Hernandez's participation, including helping abduct Rosado, having Abdygapparova get tape to bind her, standing guard while she was sexually assaulted, and sending Abdygapparova to buy a shovel used to bury Rosado after she was murdered, it was reasonable for the appellate lawyer to conclude that an appellate court would find the trial's result would have been the same if Abdygapparova's full statement were admitted. Choosing not to plead weak arguments on appeal but to focus on those most likely to suc-ceed forms the core of effective appellate advocacy. *Smith v. Murray*, 477 U.S. 527, 535-36 (1986). Thus, even though counsel did not prevail on appeal, drop-ping this weak argument in favor of points he believed were stronger was a legi-timate tactical decision that is not ineffective assistance.

Because of the strength of the evidence presented, and given that no part of the statement refutes Hernandez's alleged participation in murdering Rosado, Hernandez also suffered no prejudice from the court's refusal to admit Abdygap-parova's statement in full. As explained, the evidence was strong enough, partic-ularly under the Texas law of parties, that admitting the statement would not have changed the result. Though nothing in the statement directly says Hernan-dez killed Rosado, it does describe his participation in the crime. The closest the statement comes to exculpating him is where Abdygapparova discusses return-ing to the hotel after Rosado was killed:

14

Santos opened the door. He wouldn't let me in, but walked me back to the car. He was telling me not to go in there. I asked him why, what did they do in there. He said she is gone. I said what do you mean, you killed her? He said "yes, she is gone." He told me to wait outside. I was waiting by the car. Santos came back out and called me to the room. I went into the room and saw her laying down on the floor. She didn't have a towel on her head anymore and she had no clothes on. That is when I saw her body. She was dead. She wasn't moving, and she didn't have the towel on her head or the tape on her wrists. Her eyes were closed, and there was some blood on the right side of her face. I couldn't tell where it was coming from. They told me they have to bury her.

Although Abdygapparova did ask Minjarez "you mean you killed her" and he answered "yes, she is gone," before that she asked what they had done, so "you" could as easily have been plural for both Hernandez and Minjarez as it could have been Minjarez alone. Further, because Abdygapparova was buying a shovel, she was gone during the murder. Overall, nothing in the statement exculpates Hernandez.

The jury already knew Abdygapparova was not present for the killing, so the full statement, showing that she indicated that Hernandez did it, adds nothing. Even if it does not say directly that he killed her, the statement describes Hernandez as a major participant and never clears him, so introducing all of it, with the other evidence, would not have changed the jury's impression that Hernandez's girlfriend turned him in to the police for this crime. Thus, even if the court should have admitted the full statement, Hernandez suffered no prejudice from its failure to do so.

Because none of Hernandez's arguments merits further review, the request for a COA is DENIED.