# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 2, 2013

No. 12-50280

Lyle W. Cayce
Clerk

GENTRIES THOMAS

Petitioner-Appellee

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:10-CV-682

Before STEWART, Chief Judge, and SMITH and WIENER, Circuit Judges.

PER CURIAM:*

This is an appeal from a district court's grant of prisoner Gentries Thomas's petition for a writ of habeas corpus. Thomas was found guilty of aggravated robbery in Texas court in October 2007 and currently is serving a 30-year sentence for that crime. After exhausting his remedies in state court, Thomas filed his 28 U.S.C. § 2254 petition in the United States District Court for the Western District of Texas alleging, *inter alia*, ineffective assistance of

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-50280

counsel. That court granted his petition based on his trial counsel's failure to object to the prosecutor's comments about (1) uncalled witnesses being afraid to testify; and (2) Thomas's confession to a cousin that was not admitted into evidence. The State now appeals the district court's grant of the writ. Satisfied the state court did not unreasonably conclude that Thomas had failed to demonstrate ineffective assistance of counsel, we REVERSE and DISMISS the § 2254 petition.

## I. FACTS AND PROCEEDINGS

This case arises out of a January 2007 robbery for which Thomas was sentenced to 30 years of imprisonment. The victim, Billy Ray Lott, testified at trial that on the day of the robbery, he had been driving around with an acquaintance, Tamara Porter. Lott was carrying a wad of $1500 cash at the time, which Porter had seen. Porter requested that Lott pull into a rest stop, and he complied. Shortly thereafter, Thomas arrived and conversed with Porter. When another car arrived at the rest stop, Porter instructed Lott to drive her further up the road to another rest stop where she might finish her conversation with Thomas, and Lott again complied. When Lott and Porter pulled into the next rest stop, Thomas had already arrived. Porter asked, then insisted, that Lott exit the car, and when he did, Thomas hit him on the back of the head eight to ten times with a blunt object.[1] Thomas and Porter searched Lott for the wad of cash and, failing to find it, fled the scene. Lott, who had known Thomas since he was a child, identified him as the attacker just hours after the incident and again in the days that followed.

Shortly after Thomas's arrest, police obtained a sworn statement from Porter in which she recounted the events of the robbery and Thomas's role as the

---

[1] Lott originally reported to an investigating officer that he was hit with a bat; later, he insisted that it was some hard object contained within a sock. No weapon was ever found.

2

No. 12-50280

attacker. Thomas's cousin, Lavetta Harrison, also provided a statement recounting Thomas's confession to her mere days before his arrest. At trial, however, neither Porter nor Harrison was available to testify, and the State instead relied primarily on Lott's testimony identifying Thomas as his attacker.

At trial, Thomas's counsel, Mercedes Kutcher, called three alibi witnesses—Thomas's wife, mother, and nine-year old daughter—to place him at home celebrating his daughter's birthday at the time of the attack. On cross-examination, the prosecutor questioned Thomas's mother about whether people in the community were afraid of her son. This followed the prosecutor's conversation with a juror during voir dire in which the prosecutor suggested that the State's witnesses were few because others were afraid to testify. In her closing statements, the prosecutor again suggested that additional witnesses might have testified but for their fear of the defendant. Defense counsel did not object to the remarks during voir dire, cross-examination, or closing statements. On cross-examination, the prosecutor also asked Thomas's mother, and later his wife, whether they would be surprised by Thomas's confession to his cousin Lavetta Harrison. Although Harrison's statement was not in evidence, defense counsel again did not object. Both witnesses suggested that Harrison was not telling the truth.

After deliberating for 74 minutes, the jury found Thomas guilty of aggravated robbery. The conviction was affirmed in both the intermediate appellate court and the Court of Criminal Appeals (CCA).[2]

Thomas's trial counsel died three days after the CCA's mandate issued. Thomas filed a state habeas petition *pro se*, contending that his counsel had provided ineffective assistance by, *inter alia*, (1) failing to object to the prosecutor's questions and remarks about potential witnesses being afraid of

---

[2] Thomas was represented by other counsel in these appeals.

3

No. 12-50280

Thomas, and (2) failing to object to the prosecutor's questions regarding Thomas's confession. To support his ineffective assistance claim, Thomas attached excerpts of the trial transcript to his petition and requested an evidentiary hearing. The State did not respond to the petition and the trial court did not act on it, so the application was transmitted to the CCA pursuant to a state law equating a trial court's silence with a finding that no controverted and unresolved material facts remained.[3] The CCA denied the habeas petition without reasons.

Thomas then filed a substantially similar habeas petition in the district court and again requested an evidentiary hearing. The court found no merit in contentions not relevant to this appeal, but granted Thomas's petition after concluding that he had established ineffective assistance based on his defense counsel's failure to object to the prosecutor's questions and remarks about absent witnesses' fear of Thomas and his confession to his cousin.

The State now appeals the district court's grant of Thomas's habeas petition. It contends that Thomas failed to establish that he received constitutionally ineffective assistance, and that even if he had shown a constitutional violation, he nevertheless failed to surmount the Antiterrorism and Effective Death Penalty Act's (AEDPA) relitigation bar.

## II. ANALYSIS

### A.    Standard of Review

In reviewing a grant of habeas relief, we examine the district court's factual findings for clear error and issues of law de novo.[4] As this case is subject

---

[3] *See* TEX. CODE OF CRIM. P. Art. 11.07, § 3(c).

[4] *Barrientes v. Johnson*, 221 F.3d 741, 750 (5th Cir. 2000).

No. 12-50280

to the AEDPA's strictures, we review de novo whether the district court afforded appropriate deference to the CCA's decision.

## B.    AEDPA Deference

To establish a cognizable claim of ineffective assistance of counsel, a claimant must satisfy both prongs of *Strickland v. Washington*'s[5] two-part test, *viz.*, that (1) counsel's performance was deficient and (2) that deficient performance caused actual prejudice to the petitioner's defense.  The district court is not to consider the question de novo, however, when a state court has already adjudicated the claim on the merits.  Rather, AEDPA's relitigation bar requires that the petition be denied unless  the state's adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[6]  The question under AEDPA "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."[7]  And because *Strickland* and § 2254(d) both impose highly deferential standards, "when the two apply in tandem, review is 'doubly' so[.]"[8]

---

[5]   466 U.S. 668 (1984).

[6]   28 U.S.C. § 2254(d).

[7]   *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[8]   *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

No. 12-50280

The Supreme Court recently emphasized in *Harrington v. Richter* the way that a federal court is to consider an ineffective assistance of counsel claim raised in a habeas petition subject to AEDPA's strictures:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.[9]

The *Richter* Court criticized the Ninth Circuit for failing to disentangle the constitutional question under *Strickland* from "the only question that matters under § 2254(d)"[10]—whether fairminded jurists could disagree that any arguments or theories that supported, or even *could have* supported, the state court's decision are inconsistent with a prior holding of the Supreme Court.[11]

The district court in this case performed its analysis just as did the Ninth Circuit in *Richter*: It considered Thomas's claim under the two-pronged *Strickland* test and, finding merit in some of Thomas's contentions, concluded

---

[9] *Id.* at 785 (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

[10] *Id.* at 786 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003)).

[11] *See id.* (concluding that it was "not apparent how the Court of Appeals' analysis would have been any different without AEDPA[,]" since that court "explicitly conducted a de novo review, and after finding a *Strickland* violation, [] declared, without further explanation, that the state court's decision to the contrary constituted an unreasonable application of Strickland") (internal quotation marks omitted).

6

summarily: "The state courts' determination that Thomas was not denied the effective assistance of counsel is contrary to and amounted to an unreasonable application of clearly-established federal law." Although the court cited *Richter* in setting out its standard of review, it provided no substantive analysis of the reasonableness of the CCA's adjudication. As the *Richter* Court noted, "AEDPA demands more."[12] Thus, after we consider the merits of Thomas's constitutional claim under *Strickland*, we then answer AEDPA's statutory question whether the CCA's denial of habeas was reasonable.[13]

### C.    *Strickland* Standard

A petitioner fails to show a constitutional violation under *Strickland* unless he demonstrates both that his counsel's performance was deficient and that the deficient performance actually prejudiced his defense. Satisfying the former prong requires that "counsel's representation fell below an objective standard of reasonableness."[14] Courts must apply a "strong presumption that counsel performed adequately and exercised reasonable professional judgment[,]"[15] making every effort to "eliminate the distorting effects of

---

[12]  *Id.*

[13]  We consider Thomas's ineffective assistance claim through the lens of § 2254(d), cognizant that (1) AEDPA deference applies only to those claims previously "adjudicated on the merits" in state court proceedings, and (2) the CCA in this case denied Thomas's habeas petition without reasons. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 784. Indeed, a state court need not cite or even be aware of Supreme Court case law to receive § 2254(d) deference. *Id.* (citing *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam)).

[14]  *Strickland*, 466 U.S. at 688.

[15]  *Titsworth v. Dretke*, 401 F.3d 301, 310 (5th Cir. 2005) (citing *Strickland*, 466 U.S. at 689).

hindsight[.]"[16] Thus, a "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."[17]

As the State asserts, the district court in this case failed to indulge the possibility that counsel's silence during voir dire, cross-examination, and closing remarks might have been based on calculated trial strategy. Indeed, panels from this court have recognized that deciding whether to object before a jury is a quintessential matter of trial strategy not to be second-guessed.[18] Here, counsel's decision to forgo objection to the prosecutor's remarks about her client's confession to his cousin was not unreasonable: No confession had been admitted into evidence, and counsel could have reasoned that objecting would have sharpened the jury's focus on the prosecutor's fleeting remarks. Objecting also might have appeared to jurors to be an effort to hide the ball, a devastating consequence for a defense relying largely on jurors' assessments of the veracity

---

[16] *United States v. Harris,* 408 F.3d 186, 189 (5th Cir. 2005) (quoting *Strickland*, 466 U.S. at 689).

[17] *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006) (quoting *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004)).

[18] *See, e.g., Hernandez v. Thaler*, 463 F. App'x 349, 356 (5th Cir. 2012) (counsel's decision not to object to prosecutor's statement during closing that suggested the victims' families would want a death sentence was not an unreasonable trial strategy when voicing an objection might, for example, undermine the legitimacy of the lawyer's own emotional appeals to spare his client's life); *Charles v. Thaler*, 629 F.3d 494, 502 (5th Cir. 2011) (counsel's decision not to object to adverse witness testimony was not an unreasonable trial strategy when doing so would draw undue attention to that harmful testimony); *Hernandez v. Thaler*, 398 F. App'x 81, 87 (5th Cir. 2010) (counsel's decision not to object to the prosecutor's mischaracterization of witness testimony during closing argument was not unreasonable strategy when objecting would draw undue attention to that testimony); *see also Drew v. Collins*, 964 F.2d 411, 423 (5th Cir. 1992) (noting, in a pre-AEDPA case, that a "decision not to object to a closing argument is a matter of trial strategy").

of alibi witnesses and the narrative created by defense counsel.[19]   Likewise, Thomas's counsel did not act unreasonably in failing to object to the prosecutor's suggestions that additional witnesses were unavailable to testify because they were afraid of the defendant: Knowing the jury would hear from Thomas's mother, wife, and daughter, his counsel might have reasoned that their supporting presence and alibi stories would dispel any notion of Thomas as a frightening man.  In such a case, objecting might have harmed the defense.

Even were we to conclude that these were unreasonable trial tactics, affirming the district court would require that we conclude additionally that jurists of reason could not disagree with us.  As the Supreme Court has noted, "[i]f this standard is difficult to meet, that is because it was meant to be."[20] Having found that the CCA's decision was not unreasonable, we need not consider the prejudice prong under *Strickland*.

## D.   Evidentiary Hearing

We note, finally, that no court has granted Thomas an evidentiary hearing to develop his ineffective assistance claim.  Thomas requested such a hearing before the state habeas court, yet his request was denied without reasons given, as was his petition itself.  Thomas then submitted a lengthy letter to the federal district court reiterating his request for a hearing to develop his claim.  The district court granted Thomas's habeas petition without a hearing, based on counsel's performance as manifest in the trial transcript alone.  Although the

---

[19]  *See, e.g., Rivas v. Thaler*, 432 F. App'x 395, 404 (5th Cir. 2011) (state habeas court was not unreasonable in determining that lawyer's decision to "object as little as possible on cross-examination in order to appear open and honest with the jury" was not unreasonable trial strategy).

[20]  *Richter*, 131 S. Ct. at 786.

No. 12-50280

parties do not brief the issue, we consider whether, in reversing the district court's grant of a writ of habeas corpus, we should remand to that court for an evidentiary hearing. We conclude that remand is not warranted.

Following the Supreme Court's 2011 decision in *Cullen v. Pinholster*,[21] federal habeas review under 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits[,]"[22] even when a federal court evidentiary hearing is not otherwise barred by § 2254(e). Although the state habeas court declined to hold a hearing before denying Thomas's petition, Thomas had not presented, by affidavit or otherwise, evidence of his counsel's ineffective assistance aside from the trial transcript itself.[23]

Indeed, just what evidence even *could* have supported his ineffective assistance claim once his lawyer died is itself uncertain. The Supreme Court has directed that we "indulge the strong presumption that counsel made all significant decisions in the exercise of reasonable professional judgment[,]"[24] *i.e.*, that we "not simply . . . give the attorney[] the benefit of the doubt, but . . .

---

[21] 131 S. Ct. 1388 (2011).

[22] *Id.* at 1398. Our review in this case comes through the lens of 2254(d)(1) only because we are instructed to assume that the CCA's denial without reasons constitutes an "adjudication on the merits." *See Richter*, 131 S. Ct. at 784-85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

[23] Even if we were not limited by *Pinholster* to the state court record, Thomas's right to a hearing under § 2254(e)(2) would be doubtful at best, given his failure to present evidence to the state court in support of his claim of ineffective assistance of counsel. *See Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000) (merely requesting evidentiary hearings in state habeas proceedings does not excuse failure to develop those claims under § 2254(e)(2); petitioner did not present affidavits from family members in state court habeas petition or show that they could not be obtained absent an order for discovery or a hearing).

[24] *Pinholster*, 131 S. Ct. at 1407 (internal quotation marks and brackets omitted).

affirmatively entertain the range of possible reasons [Thomas's] counsel may have had for proceeding as [she] did[.]"[25]  The Court has read *Strickland* as "call[ing] for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind[,]"[26] in the same opinion that it purported to affirm that a court still "may not indulge '*post hoc* rationalization' for counsel's decisionmaking that contradicts the available evidence of counsel's actions[.]"[27]  Reconciling those statements is no easy task, and it is unclear how, short of a candid admission that he was unfamiliar with the law, a lawyer might be deemed to have provided ineffective assistance for failing to raise an objection when strategy could conceivably justify silence.  As Thomas's deceased lawyer cannot provide answers, the reasons for her decisions at trial—if indeed they were "decisions" at all—will remain forever unknown.  A federal court evidentiary hearing would do little good, if any, even *if* the facts there discovered could be considered.

## E.    Conclusion

Because the trial transcript—the only evidence of deficient performance in the state and federal court records—does not indicate that defense counsel acted unreasonably in failing to object to the prosecutor's remarks, the CCA was not unreasonable in denying Thomas's petition.  We therefore REVERSE the judgment of the district court and DISMISS Thomas's § 2254 petition.

---

[25] *Id.* (internal quotation marks and brackets omitted).

[26]  *Richter*, 131 S. Ct. at 790.

[27] *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 526-27 (2003)).